# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### ABILENE DIVISION

| | | |
|---|---|---|
| **ISMAEL JAIMES,** | § | **CIVIL ACTION** |
| | § | **NO:  __1:25-cv-249___** |
| **vs.** | § | |
| | § | |
| **CITY OF ABILENE** | § | |
| | § | **DEMAND FOR JURY TRIAL** |

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

COMES NOW, Ismael Jaimes, an individual, Plaintiff ("Plaintiff" or "Jaimes"), by and through his undersigned attorneys, and submits this Complaint and Jury Demand against Defendant City of Abilene on the following allegations:

## I. NATURE OF ACTION

**1.01** This action is brought to redress unlawful employment practices, constitutional violations, and unauthorized electronic surveillance committed by the City of Abilene under federal and state law.

**1.02** Plaintiff was subjected to a sustained pattern of discriminatory and retaliatory conduct by the City of Abilene, including disability discrimination, failure to accommodate, interference with protected leave, unlawful GPS surveillance, constructive discharge, and violations of his constitutional rights under the First, Fourth, and Fourteenth Amendments. These violations include the deprivation of procedural due process protections arising from adverse employment actions taken without meaningful notice or opportunity to be heard. (See ¶6.01–6.22 [Factual Background]; ¶7.01–7.36 [Timeliness and Tolling].)

**1.03** Plaintiff asserts federal claims under the ADA, FMLA, 42 U.S.C. § 1983, and federal privacy statutes for discrimination, retaliation, unlawful surveillance, and constitutional violations.

**1.04** Plaintiff also asserts a state-law claim for whistleblower retaliation under the Texas Whistleblower Act, Tex. Gov't Code § 554.002, based on adverse personnel actions taken in response to his good faith reports of unlawful conduct to law enforcement authorities. (See ¶6.05.)

**1.05** Plaintiff seeks declaratory relief, compensatory and punitive damages, attorneys' fees, and all other remedies available under law. (See ¶¶8.01–8.13; ¶¶9.01–9.05.)

## II. DEFENDANT

**2.01** Defendant City of Abilene ("Defendant" or "City of Abilene") is a municipal entity organized under the laws of the State of Texas and was Plaintiff's employer in Abilene, Taylor County, Texas, at the time the alleged acts of discrimination, retaliation, and other violations cited herein occurred. Defendant may be served with process by serving its City Attorney, Stanley Smith, at 555 Walnut Street, Abilene, Texas 79601, pursuant to Tex. Civ. Prac. & Rem. Code § 17.024(b).

**2.02** At all relevant times, Defendant City of Abilene has continuously been and is now doing business in the State of Texas and has continuously employed at least 500 employees.

### III. PLAINTIFF

**3.01** At all relevant times, Plaintiff Ismael Jaimes was an adult of sound mind and a resident of Taylor County, Texas.

**3.02** Plaintiff was employed by Defendant at all relevant times and was subject to the employment policies, procedures, and supervisory authority of Defendant.

### IV. JURISDICTION AND VENUE

**4.01** This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under the laws of the United States.

**4.02** Plaintiff's claims arise under federal law, including the ADA, FMLA, 42 U.S.C. § 1983, and federal privacy statutes. This matter is properly brought in federal court.

**4.03** Plaintiff asserts federal claims under the following statutes:

**(a)** Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111 et seq., for disability discrimination, failure to accommodate, retaliation, and constructive discharge. (See ¶5.01–5.04; ¶7.03.)

**(b)** The Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., for interference with protected leave, retaliatory disciplinary action, and constructive discharge. (See ¶5.05; ¶6.08–6.10; ¶7.10.)

**(c)** 42 U.S.C. § 1983, for violations of Plaintiff's rights under the First Amendment (retaliation for protected speech), Fourth Amendment (unlawful GPS surveillance), and

Fourteenth Amendment (denial of procedural due process, equal protection, and class-of-one discrimination). (See ¶6.02–6.06; ¶6.12; ¶6.16–6.17; ¶7.24–7.28.)

**(d)** 18 U.S.C. §§ 2511 and 2520, for unauthorized electronic surveillance and interception of location-linked communications, in violation of the Federal Wiretap Act and the Electronic Communications Privacy Act ("ECPA"). (See ¶6.03–6.05.)

**4.04** This Court also has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) and (a)(4), as Plaintiff seeks to redress the deprivation of constitutional rights under color of state law and to recover damages under federal civil rights statutes, including 42 U.S.C. § 1983.

**4.05** In addition, this Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a), as it arises from the same nucleus of operative facts as the federal claims and forms part of the same case or controversy. This supplemental claim is closely intertwined with the federal causes of action and includes:

**(a)** Whistleblower retaliation under the Texas Whistleblower Act, Tex. Gov't Code § 554.002, for adverse actions taken in response to Plaintiff's reports to law enforcement authorities. (See ¶6.05.)

**4.06** Venue is proper in the Northern District of Texas under 28 U.S.C. § 1391(b), because the events giving rise to the claims occurred in Abilene, Texas, and Defendant City of Abilene is located and operates within this district.

**4.07** Plaintiff has exhausted administrative remedies where required. He filed an EEOC inquiry on March 7, 2025, and received a Notice of Right to Sue from the U.S. Department of Justice on

August 25, 2025, with respect to claims under the ADA and FMLA. This action was filed within ninety (90) days of receiving that notice. (See ¶5.01–5.04; ¶7.03.)

**4.08** All claims asserted herein—federal and supplemental—arise from a common set of facts involving retaliation, discrimination, unlawful surveillance, and procedural violations. The federal claims form the core of this litigation, and resolution in federal court is necessary to vindicate Plaintiff's constitutional and statutory rights. (See ¶6.01–6.22 [Factual Background]; ¶7.01–7.36 [Timeliness and Tolling].)

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

**5.01** Plaintiff filed an inquiry with the Equal Employment Opportunity Commission ("EEOC") on March 7, 2025, alleging disability discrimination, retaliation, and related civil rights violations arising from his employment with the City of Abilene.

**5.02** Although submitted outside the standard 300-day window following Plaintiff's constructive discharge on February 28, 2024, the EEOC accepted the inquiry and referred the matter to the U.S. Department of Justice ("DOJ") pursuant to 42 U.S.C. § 12117(a), based on the City's status as a municipal employer. (See ¶7.03.)

**5.03** On August 25, 2025, the DOJ issued a formal Notice of Right to Sue, authorizing Plaintiff to pursue claims under Title I of the Americans with Disabilities Act ("ADA"), including disability discrimination, failure to accommodate, and retaliation.

**5.04** This action is filed within ninety (90) days of Plaintiff's receipt of the Notice. A true and correct copy is attached as Exhibit B.

**5.05** Plaintiff's claims under the Family and Medical Leave Act ("FMLA"), 42 U.S.C. § 1983, the Federal Wiretap Act, and the Electronic Communications Privacy Act ("ECPA") do not require administrative exhaustion and are properly before this Court.

**5.06** Plaintiff's supplemental state-law claim under the Texas Whistleblower Act, Tex. Gov't Code § 554.002, also does not require administrative exhaustion and is properly before this Court under 28 U.S.C. § 1367(a).

**5.07** The following claims are timely and properly before this Court:

> **(a)** Claims under 42 U.S.C. § 1983 for violations of the First Amendment (retaliation for protected speech), Fourth Amendment (unlawful GPS surveillance), and Fourteenth Amendment (denial of procedural due process, equal protection, and class-of-one discrimination). (See ¶6.02–6.06; ¶6.12; ¶6.16–6.17.)

> **(b)** Claims under the Federal Wiretap Act, 18 U.S.C. § 2511, and the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2520, for unauthorized electronic surveillance and privacy violations. (See ¶6.03–6.05.)

> **(c)** Claims under the FMLA, 29 U.S.C. § 2615, for interference with protected leave, retaliatory disciplinary action, and constructive discharge. (See ¶6.08–6.10; ¶6.19–6.20.)

> **(d)** A supplemental state law claim for whistleblower retaliation under the Texas Whistleblower Act, Tex. Gov't Code § 554.002, based on Plaintiff's reports to law enforcement authorities. (See ¶6.05.)

**5.08** All claims are based on conduct occurring within the applicable statutory periods and are properly before this Court.

**5.09** To the extent any claim is challenged as untimely, Plaintiff asserts that equitable tolling applies. Plaintiff acted diligently but was impeded by ongoing retaliation, psychological distress, and Defendant's concealment of investigative outcomes. The limitations period did not begin to run until Plaintiff had a reasonable opportunity to discover the underlying misconduct. (See ¶¶7.06–7.09; ¶¶7.25–7.28.)

## VI. FACTUAL BACKGROUND

**6.01** Plaintiff served with distinction as a Sergeant in the Abilene Police Department ("APD") from 1998 until his retirement in early 2024. Over his 25-year career, he held multiple supervisory roles, received commendations including a departmental valor award, and was appointed in mid-2021 to lead the Narcotics Division. In that role, he oversaw record-setting drug seizures, coordinated federal and state prosecutions, and partnered with agencies including federal and state law enforcement.

**6.02** Upon assuming command of the Narcotics Division, Plaintiff encountered resistance from a group of agents who operated as an exclusive unit internally referred to as the "4 Horsemen." These agents routinely excluded Plaintiff from operations, undermined his authority, and refused to follow the chain of command. In late 2022, Plaintiff submitted formal reprimands and removal requests for two members of the unit, citing insubordination and procedural violations. No corrective action was taken.

**6.03** In early 2023, Plaintiff became aware of circumstances suggesting that an unauthorized GPS tracking device had been installed on his city-leased vehicle. This inference arose during a conversation with a lieutenant, who denied the existence of a tracker but referenced a specific coordinate location that could only have been obtained through real-time surveillance. A human

resources representative witnessed this exchange. Plaintiff inspected his vehicle and observed physical evidence consistent with prior tracker placement. Although the device was no longer present, a fellow officer later admitted to placing it without consent or legal justification. (See Exhibit H; Exhibit A.)

**6.04** The existence of the tracker was concealed from Plaintiff until a lieutenant's inadvertent disclosure. This concealment delayed Plaintiff's ability to file a grievance or seek legal redress, supporting equitable tolling. Plaintiff documented the suspected tracker location and retained photographs. He filed a grievance and consulted with a Texas Ranger, who initiated an investigation. Despite the seriousness of the allegations, Plaintiff received no formal response or resolution from the City. (See Exhibit H; Exhibit A.)

**6.05** In August 2023, the District Attorney sent a letter to the investigating Ranger confirming findings related to the unauthorized GPS tracking. The letter identified potential criminal violations under Texas law, including unlawful installation of a tracking device, abuse of official capacity, official oppression, and misuse of official information. The DA stated his intent to present the matter to a grand jury and to seek a special prosecutor due to his relationship with Plaintiff and other APD personnel. (See Exhibit I.)

**6.06** Despite the criminal implications outlined in the DA's letter, APD leadership—including senior command staff and the City Manager—failed to notify Plaintiff or take remedial action. The tracker remained active during both work and personal hours, constituting an unlawful search and invasion of privacy. The investigating Ranger confirmed that the device had been installed without authorization. APD leadership did not report the device to the District Attorney or the Rangers.

**6.07** In a phone call with the DA and Plaintiff, the City Manager admitted he had known about the tracker but had taken no action. Plaintiff filed a formal grievance. One week later, the City Manager met with Plaintiff, apologized, and acknowledged that the tracker had been placed maliciously and without authorization and that those responsible would be prosecuted. He stated that Plaintiff had committed no violations and instructed the Interim Chief to "make it right." The Interim Chief offered to return Plaintiff to the Narcotics Division but never followed through.

**6.08** Instead of being reinstated, Plaintiff was reassigned to a midnight patrol shift that included officers involved in the surveillance and retaliation. Despite assurances that Plaintiff could choose any division due to seniority, he was given only two undesirable options. This reassignment placed Plaintiff in proximity to those responsible for the misconduct and contributed to the intolerable conditions that led to his constructive discharge. (See Exhibit A.)

**6.09** On his first patrol call, Plaintiff was assigned to back up the officer who had tracked him. Plaintiff experienced a psychological episode, blacked out with anger, and requested to go home. A lieutenant advised him to take stress leave. Plaintiff was placed on approved FMLA leave from July through October 2023 due to anxiety, hypertension, and other stress-related medical issues. (See Exhibit E; Exhibit A.)

**6.10** During leave, Plaintiff received an email from a senior official stating he could not work extra duty while on FMLA. Unaware that this restriction applied to his private homebuilding business, Plaintiff continued limited involvement in non-physical tasks. He was later investigated for allegedly violating FMLA restrictions and for "untruthfulness." A command staff member

accused him of working while on leave and misrepresenting his activities. These allegations led

to internal affairs investigations IA 23-19 and IA 23-20. (See Exhibit E; Exhibit A.)

**6.11** Additional allegations were raised, including a two-year-old claim that Plaintiff possessed

an open container of alcohol in a city vehicle. The incident, involving other officers, had been

previously dismissed but was revived as IA 23-12. Plaintiff admitted to carrying a bottle of

alcohol in his backpack during a trip but denied consuming it in the vehicle. The allegation was

classified as a Class C misdemeanor and used to justify further disciplinary action. (See Exhibit

E.)

**6.12** Plaintiff was ultimately accused of "untruthfulness" on sixteen separate occasions, despite

inconsistencies in the investigative process and lack of procedural safeguards. He was told he

could not retire while under investigation, as it would jeopardize future employment. Upon

arrival of a new chief, Plaintiff was informed the investigations were invalid and had been

"squashed," but no formal resolution or final report was provided. At this time, it was still

unclear whether the individuals responsible for the unauthorized GPS tracking would be

prosecuted, as Plaintiff's last update indicated they were being indicted as of December 2023.

(See Exhibit A.)

**6.13** Plaintiff retired honorably in early 2024. After 25 years of service, only a few colleagues

saw him out. The psychological toll of retaliation continues to affect him, including intrusive

thoughts, emotional distress, and recurring nightmares. (See Exhibit A; Exhibit F; Exhibit G.)

**6.14** Individuals who supported Plaintiff feared retaliation and chose to remain anonymous.

Their reluctance to come forward underscores the climate of intimidation and institutional

retaliation within APD.

**6.15** The GPS tracking incident marked the beginning of a sustained campaign to discredit and remove Plaintiff. The involvement of senior leadership, the pattern of retaliatory investigations, and the psychological harm inflicted reflect a continuous violation of his rights under federal and state law. (See Exhibit A; Exhibit F; Exhibit G.)

**6.16** Following Plaintiff's whistleblower activity and protected grievance filings, APD initiated a series of retaliatory Internal Affairs investigations designed to discredit and marginalize him. These included:

1. **(a)** IA 23-08 (June 2023): Initiated without notice, based on a grievance alleging poor judgment following Plaintiff's reassignment and disciplinary actions against subordinates;

   **(b)** IA 23-12 (September 2023): Revived complaint regarding a 2021 incident previously dismissed;

   **(c)** IA 23-19 (January 2024): Targeted Plaintiff's permitted business activity during approved FMLA leave, based on third-party social media posts;

   **(d)** IA 23-20 (January 2024): Alleged dishonesty during prior IA interviews, based on distorted interpretations of Plaintiff's statements;

   **(e)** IA 24-01 (February 2024): A continuation of dishonesty allegations, initiated without new evidence and shortly before Plaintiff's retirement.

   (See Exhibit E [IA records and timeline]; Exhibit A.)

**6.17** These investigations were procedurally irregular, relied on stale or previously dismissed allegations, and were disproportionately applied to Plaintiff compared to similarly situated

officers. He was repeatedly denied notice, opportunity to respond, and equal protection under departmental policy. (See Exhibit A.)

**6.18** In mid-2023, Plaintiff was diagnosed with a stress-related condition and took approved FMLA leave through the fall. He did not perform physical labor and remained in compliance with APD policy. Nevertheless, he was investigated for alleged misuse of city property and business activity, further compounding the retaliatory scrutiny. (See Exhibit E; Exhibit A.)

**6.19** Plaintiff's reassignment, exclusion from operations, and repeated targeting were carried out in retaliation for his protected speech, grievance activity, and disability-related leave. These actions violated the ADA, the FMLA, and the Texas Whistleblower Act. (See Exhibit A; Exhibit F; Exhibit G.)

**6.20** In early 2024, Plaintiff retired from APD, citing cumulative retaliation, psychological distress, and medical complications. The circumstances of his departure constitute a constructive discharge under federal law. (See Exhibit A.)

**6.21** The retaliatory conduct against Plaintiff began with the unauthorized GPS surveillance and escalated through a coordinated series of disciplinary actions. The involvement of a select group of officers, the timing of each IA investigation, and the City Manager's direct request to the District Attorney to drop charges against those responsible for the surveillance reflect a sustained effort to shield misconduct and discredit Plaintiff. Despite initial indications that indictments were forthcoming, no one was prosecuted. This institutional protection of unlawful conduct underscores the retaliatory intent behind Plaintiff's exclusion and eventual constructive discharge. (See Exhibit A; Exhibit E.)

**6.22** Plaintiff filed an EEOC inquiry in March 2025 and received a Notice of Right to Sue from the U.S. Department of Justice in August 2025. (See Exhibit B [DOJ Notice of Right to Sue]; Exhibit C [EEOC referral letter]; Exhibit D [E-file acknowledgment]; Exhibit E [Charge Packet].)

## VII. TIMELINESS AND TOLLING

**7.01** Plaintiff asserts that all claims in this action are timely filed within the applicable statutory limitations periods or are subject to recognized exceptions under federal law, including equitable tolling, the continuing violation doctrine, and the delayed discovery rule. These doctrines apply due to Defendant's concealment of misconduct, procedural irregularities, and a sustained pattern of retaliation that impeded Plaintiff's ability to pursue legal remedies.

### A. Timeliness Under the ADA and FMLA

**7.02** Under the Americans with Disabilities Act (ADA), a plaintiff must file a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 300 days of the alleged discriminatory act, where the state provides a mechanism for addressing such complaints, as Texas does. See *Gray v. Sears, Roebuck & Co.*, 131 F. Supp. 2d 895, 899 (N.D. Tex. 2001).

**7.03** The limitations period begins to run on the date the plaintiff knew or should have known of the discriminatory act. See *Thibodeaux v. Transit Mix Concrete & Materials Co.*, 3 F. Supp. 2d 743, 745 (E.D. Tex. 1998). Plaintiff filed an EEOC inquiry on March 7, 2025, and received a Notice of Right to Sue from the U.S. Department of Justice on August 25, 2025. This action was filed within ninety (90) days of receipt of that notice. (See Exhibit B [DOJ Notice of Right to

Sue]; Exhibit C [EEOC referral letter]; Exhibit D [E-file acknowledgment]; Exhibit E [EEOC

Charge Packet].)

**B. Equitable Tolling**

**7.04** Equitable tolling applies when a plaintiff, despite diligent efforts, is prevented from timely

asserting their rights due to extraordinary circumstances outside their control. The Fifth Circuit

recognizes tolling where the defendant intentionally conceals facts giving rise to the claim. See

*Gomez v. Glob. Precision Sys., LLC*, 636 F. Supp. 3d 746, 752 (S.D. Tex. 2023).

**7.05** In *Gomez*, the court applied tolling where the employer concealed the true reason for

termination and misled the plaintiff about the nature of the adverse action. Despite repeated

inquiries, the plaintiff was denied access to relevant information. The court found that her

diligence, combined with the employer's concealment, warranted tolling.

**7.06** Plaintiff's case presents even stronger grounds for tolling. He was subjected to a sustained

campaign of retaliation: unauthorized GPS surveillance, involuntary reassignment, exclusion

from command responsibilities, and multiple Internal Affairs investigations. Despite repeated

requests, Plaintiff was denied access to final IA reports and written findings for key

investigations, including IA 23-08 and IA 23-12. Command staff misled him, claiming the

investigations had been "squashed," yet no formal closure was ever issued. These actions

concealed the scope and intent of the retaliation, obstructing Plaintiff's ability to understand the

full extent of the violations. (See Exhibit E [Ranger report, IA records]; Exhibit A [Plaintiff's

sworn declaration]; Exhibit F and Exhibit G [supporting affidavits].)

**7.07** Plaintiff did not sit on his rights. He submitted formal complaints, responded to Internal

Affairs inquiries, documented suspected surveillance, and sought punishment of offenders in the

department, all while being denied access to final IA reports and procedural closure. These efforts were consistent, targeted, and persistent, even as command staff misled him and obstructed his access to critical records. Plaintiff's conduct reflects diligence under pressure, not delay.

**7.08** Plaintiff also faced extraordinary health-related barriers. In July 2023, he was placed on approved FMLA leave due to stress-induced hypertension, anxiety, and psychological distress, all directly tied to the retaliatory conduct. His symptoms included intrusive thoughts, emotional instability, and recurring nightmares, which impaired his ability to process the scope of the misconduct and pursue legal action. These conditions were not speculative as they were medically documented and exacerbated by the City's refusal to provide closure, its concealment of misconduct, and its obstruction of Plaintiff's attempts to obtain investigative records. (See Exhibit E [medical documentation]; Exhibit A [Plaintiff's declaration]; Exhibit F and Exhibit G [supporting affidavits].)

**7.09** These health conditions were not only substantiated as they were a direct consequence of the retaliatory acts forming the basis of Plaintiff's claims. The cumulative effect of psychological harm, procedural obstruction, and misleading communications created extraordinary circumstances beyond Plaintiff's control. These barriers meet the Fifth Circuit's standard for equitable tolling and explain the delay in filing, which was caused not by Plaintiff's inaction, but by the very misconduct he seeks to challenge.

**7.10** Plaintiff's federal claims—including those under the ADA, FMLA, Section 1983, the Federal Wiretap Act, and the ECPA—are subject to equitable tolling where external

circumstances obstruct a plaintiff's ability to assert their rights. See *Gomez*, 636 F. Supp. 3d at 752.

**7.11** Plaintiff's supplemental state-law claim under the Texas Whistleblower Act is also subject to tolling under Texas law where extraordinary circumstances exist. Federal courts may apply tolling to state claims under supplemental jurisdiction when those claims arise from the same operative facts and are impacted by the same obstructive conduct.

**7.12** The same concealment, procedural irregularities, and health-related barriers that delayed Plaintiff's federal claims also impeded his ability to assert his whistleblower claim. Defendant's refusal to provide investigative findings, its misleading communications, and its retaliation during Plaintiff's protected leave created a unified pattern of obstruction that affected all surviving causes of action. These circumstances meet the threshold for extraordinary conditions under both federal and Texas tolling doctrines.

**7.13** Plaintiff's record demonstrates diligence under pressure. He pursued punishment for offending agents, responded to inquiries, filed grievances, and sought access to investigative records, all while managing documented psychological and physical harm. The delays in filing were not caused by neglect, but by institutional obstruction and retaliation. As in *Gomez*, where the employer's concealment and misleading conduct justified tolling, Plaintiff's case presents a stronger factual basis. Equitable tolling is warranted to ensure these claims are heard on the merits and not foreclosed by the very misconduct they seek to remedy.

**C. Continuing Violation Doctrine**

**7.14** The continuing violation doctrine is narrowly construed in the Fifth Circuit and applies only in limited circumstances, primarily to claims involving hostile or retaliatory work environments.

It permits consideration of conduct outside the statutory limitations period if the plaintiff can show a pattern of related acts that collectively constitute a single unlawful employment practice. See *Heath v. Bd. of Supervisors for the S. Univ.*, 850 F.3d 731; *Williams v. E.I. du Pont de Nemours & Co.*, 154 F. Supp. 3d 407.

**7.15** Discrete acts—such as termination, failure to promote, or constructive discharge—are not subject to the continuing violation doctrine and must be timely filed based on their individual accrual dates. The doctrine does not apply automatically. The plaintiff must demonstrate a coordinated and temporally connected scheme of related acts that culminates in a present violation. The conduct must be sufficiently severe, pervasive, and uninterrupted to qualify as a single unlawful employment practice.

**7.16** Plaintiff alleges a sustained pattern of retaliation, including unauthorized GPS surveillance, involuntary reassignment, exclusion from command responsibilities, and repeated Internal Affairs investigations. These acts must be parsed carefully. Under Fifth Circuit precedent, each may constitute a discrete adverse action unless shown to be part of a cumulative and escalating pattern of hostility that persisted into the limitations period.

**7.17** Each retaliatory act alleged—GPS surveillance, reassignment, exclusion from command responsibilities, and repeated IA investigations—must be evaluated for whether it constitutes a discrete adverse action or contributes to a broader retaliatory environment. Discrete acts are independently actionable only if they occurred within the statutory limitations period. Their factual connection to other claims does not, by itself, bring them under the continuing violation doctrine. See *Williams*, 154 F. Supp. 3d at 414; Lee v. *City of Corpus Christi*, 749 F. Supp. 2d 521, 535.

**7.18** To invoke the doctrine, Plaintiff must show that these acts were not merely related in subject matter, but formed a coordinated and temporally connected pattern of hostility that persisted into the statutory period. The Fifth Circuit has cautioned against using the doctrine to revive stale claims where the plaintiff was aware of the discriminatory nature of the conduct but delayed asserting their rights. See *Broussard v. Oryx Energy Co.*, 110 F. Supp. 2d 532, 539. The doctrine applies only where the conduct is cumulative, uninterrupted, and severe enough to constitute a single unlawful employment practice.

**7.19** Constructive discharge is treated as a discrete act and must be analyzed accordingly. The claim accrues on the date of resignation, February 28, 2024, and cannot be retroactively linked to earlier conduct under the continuing violation framework. See *Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 439; *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 480; *Johnson v. Halstead*, 7 F.4th 391, 399.

**7.20** Plaintiff does not dispute that constructive discharge is a discrete act. Under controlling Fifth Circuit precedent, the claim accrues on the date of resignation and must be evaluated independently. It cannot be retroactively linked to earlier conduct under the continuing violation doctrine.

**7.21** The continuing violation doctrine is asserted solely to support Plaintiff's retaliation-based claims under the ADA, FMLA, and § 1983. The cumulative effect of unauthorized surveillance, reassignment, exclusion from command responsibilities, and repeated IA targeting—especially when viewed in sequence and escalating over time—constitutes a unified course of retaliatory conduct. If at least one act occurred within the statutory period, earlier acts may be considered

part of the same unlawful employment practice. See *Heath*, 850 F.3d at 737; *Williams*, 154 F. Supp. 3d at 414.

**7.22** Plaintiff does not argue that each retaliatory act independently triggers the doctrine. Rather, he contends that the coordinated and sustained nature of the retaliation created a hostile and retaliatory environment that persisted into the limitations period. The doctrine may be narrowly applied, but it remains relevant here.

### D. Delayed Discovery Rule

**7.23** The delayed discovery rule postpones the start of the limitations period until a plaintiff discovers, or through reasonable diligence should have discovered, both the injury and its connection to the defendant's conduct. The Fifth Circuit applies this rule narrowly, only to injuries that are inherently undiscoverable and objectively verifiable. See *Bartley v. Euclid, Inc.*, 158 F.3d 261, 263; *Perez v. Am. Med. Sys.*, 461 F. Supp. 3d 488, 493.

**7.24** Plaintiff's injury was not a single adverse act, but a coordinated campaign of retaliation including surveillance, reassignment, exclusion, and procedural obstruction carried out in response to protected activity. The injury became actionable when it was clear that the City was not just tolerating misconduct, but actively shielding it and marginalizing Plaintiff.

**7.25** Plaintiff reasonably believed that the officer responsible for the GPS tracking would be prosecuted. He was told that an indictment had been issued and that criminal proceedings were underway. Based on those representations, Plaintiff expected accountability through the justice system and did not pursue civil action at that time.

**7.26** The Fifth Circuit requires plaintiffs to show that the injury was concealed and that a diligent person could not have discovered it earlier. See *Vanderbilt Mortg. & Fin. v. Flores*, 692 F.3d 358, 366; *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 609. Plaintiff meets this standard

**7.27** He actively investigated—filing complaints, responding to inquiries, requesting offenders be prosecuted, and seeking access to IA findings. But the City withheld key information, misrepresented the status of disciplinary actions, and continued retaliatory conduct under the guise of procedural closure.

**7.28** Plaintiff's reliance on the criminal process was grounded in official communications. He believed the misconduct was being addressed. Only in late 2023 did he learn that no prosecution would occur and that the City had taken no internal disciplinary action. That moment reframed the injury: it was not just the GPS tracking, but the City's institutional decision to protect the perpetrator and retaliate against the complainant.

**7.29** This realization was triggered by objective facts. Plaintiff discovered that the criminal case had been dropped, no discipline had been imposed, and the department had closed ranks. At that point, Plaintiff understood that the retaliation he experienced—including surveillance, reassignment, exclusion, and procedural obstruction—was not being addressed through official channels. That was the moment the injury became fully known.

**7.30** Plaintiff does not claim ignorance of the acts themselves, as he, himself experienced them. He argues that the retaliatory motive and institutional complicity were concealed. Only when the City declined to act did he understand the full scope of the injury.

**7.31** Whether this timeline satisfies the Fifth Circuit's threshold for delayed accrual is a question of fact. Plaintiff submits that the injury—being the coordinated retaliatory campaign—was

inherently undiscoverable until late 2023, and that he acted diligently throughout. If the Court finds that threshold met, the discovery rule may defer accrual accordingly.

### E. Statute of Limitations Summary by Count

**7.32** Plaintiff asserts the following causes of action. Each is either timely under standard accrual or subject to recognized tolling doctrines as set forth in Sections VII.A through VII.D above.

### ADA and FMLA Claims (Administrative Timeline and Tolling)

**7.32.1** Count I – Disability Discrimination under the ADA

Timely filed within 300 days of the last discriminatory act and within 90 days of the DOJ's Notice of Right to Sue. See ¶7.03.

**7.32.2** Count II – ADA Retaliation

Timely under the same administrative timeline. See ¶7.03.

**7.32.3** Count III – FMLA Interference and Retaliation

Timely under standard accrual and subject to equitable tolling due to concealment of retaliatory motive and procedural obstruction. See ¶7.06; ¶7.14–7.22.

### Constitutional Claims under § 1983 (Tolling and Delayed Discovery)

**7.32.4** Count IV – First Amendment Retaliation

Subject to the standard two-year limitations period and equitable tolling based on delayed discovery and retaliatory concealment. See ¶7.06; ¶7.25–7.28.

**7.32.5** Count V – Fourth Amendment Violation (GPS Surveillance)

Subject to delayed discovery. Plaintiff did not learn of the unauthorized GPS tracking until the City's inadvertent disclosure. Although he became aware in October 2023, he reasonably relied

on the pending criminal process and did not understand the injury was final and actionable until learning no disciplinary or prosecutorial action would be taken. See ¶7.25–7.28; ¶6.03–6.04.

**7.32.6** Count VI – Procedural Due Process and Equal Protection Violations

Subject to equitable tolling due to Defendant's failure to provide notice, closure, or access to IA findings. See ¶7.06; ¶7.27; ¶6.12.

**7.32.7** Count X – Class-of-One Equal Protection Violation

Subject to equitable tolling due to Defendant's concealment of differential treatment and retaliatory motive. See ¶7.06; ¶7.27; ¶6.16–6.17.

**Other Federal and State Claims (Standard Accrual or Delayed Discovery)**

**7.32.8** Count VII – Constructive Discharge

Accrued on Plaintiff's resignation date, February 28, 2024, and filed within the applicable limitations period. See ¶7.19–7.20.

**7.32.9** Count VIII – Unauthorized Electronic Surveillance (Wiretap Act, ECPA, Tex. Penal Code)

Subject to delayed discovery and standard federal limitations period. See ¶7.25–7.28; ¶6.03–6.07.

**7.32.10** Count IX – Whistleblower Retaliation (Texas Whistleblower Act)

Filed within the applicable state limitations period following Plaintiff's protected activity and adverse employment actions. See ¶7.03; ¶7.28.

**7.33** Plaintiff incorporates the factual basis for tolling in Section VI and the legal standards in Sections VII.A through VII.D.

## VIII. CAUSES OF ACTION

### Count I – Disability Discrimination Under the Americans with Disabilities Act (ADA) (42 U.S.C. § 12112)

**8.01** Plaintiff incorporates all preceding paragraphs.

**8.02** Plaintiff brings this claim under the ADA, which prohibits discrimination against qualified individuals with disabilities in employment. See *Caldwell v. KHOU-TV*, 850 F.3d 237 (5th Cir. 2017).

### A. Disability Status

**8.03** Plaintiff has a disability under the ADA, including stress-induced hypertension, anxiety, and psychological distress documented during his approved FMLA leave from July to October 2023. He was also regarded as disabled by command staff following a psychological episode on duty. See ¶6.09; ¶6.13.

### B. Qualified Individual

**8.04** Plaintiff was qualified to perform essential job functions, as evidenced by his 25-year career, supervisory roles, and commendations including the Medal of Valor. See ¶6.01.

### C. Adverse Employment Action

**8.05** Plaintiff was reassigned to a midnight patrol shift with officers involved in prior misconduct, excluded from command, subjected to repeated IA investigations, and constructively discharged—all following his disability-related leave and psychological episode. See ¶6.08–6.10; ¶6.12; ¶6.20.

**8.06** These actions constitute unlawful discrimination under the ADA and may be proven directly or through the McDonnell Douglas framework.

**D. Failure to Provide Reasonable Accommodations**

**8.07** Defendant failed to accommodate Plaintiff's medical condition, including denying reassignment options and initiating investigations during approved leave. See ¶6.08–6.10.

**8.08** This failure violated the ADA's duty to accommodate.

**E. Disparate Treatment and Impact**

**8.09** Plaintiff was targeted for reassignment and investigations while similarly situated officers were not, reflecting both intentional discrimination and disproportionate impact. See ¶6.16–6.17; ¶6.19.

**8.10** As a result, Plaintiff suffered economic loss, emotional distress, reputational harm, and constructive discharge. See ¶6.13; ¶6.20.

**8.11** Plaintiff seeks all available relief under the ADA, including damages, reinstatement, accommodations, and attorney's fees.

**Count II – Retaliation (Americans with Disabilities Act, 42 U.S.C. § 12203)**

**8.12** Plaintiff incorporates all preceding paragraphs.

**8.13** Plaintiff brings this claim under 42 U.S.C. § 12203, which prohibits retaliation against individuals who engage in protected ADA activity.

**8.14** To establish retaliation, Plaintiff must show:

> **(a)** Engagement in protected activity;
>
> **(b)** Adverse employment action;
>
> **(c)** Causal connection between the two.

## A. Protected Activity

**8.15** Plaintiff requested accommodations for stress-related medical conditions. These are protected acts under § 12203(a). See ¶6.09–6.10.

**8.16** Defendant received formal accommodation requests and medical documentation, establishing knowledge of Plaintiff's protected activity. See ¶6.10.

## B. Adverse Employment Action

**8.17** Following protected activity, Plaintiff was reassigned to a midnight patrol shift, excluded from command, subjected to repeated IA investigations, and constructively discharged. See ¶6.08–6.12; ¶6.20.

**8.18** These actions materially affected Plaintiff's employment and meet the ADA threshold for adverse action.

## C. Causal Connection

**8.19** The timing of reassignment and investigations closely followed Plaintiff's accommodation requests, supporting a causal link. See ¶6.08–6.10.

**8.20** Plaintiff alleges that "but for" his protected activity, Defendant would not have taken these actions.

**D. Burden-Shifting Framework**

**8.21** Plaintiff has stated a prima facie case. The burden shifts to Defendant to offer a legitimate, non-retaliatory reason.

**8.22** Plaintiff alleges those reasons are pretextual and retaliation was the true motive.

**8.23** As a result of Defendant's retaliation, Plaintiff suffered economic loss, emotional distress, reputational harm, and constructive discharge. See ¶6.13; ¶6.20.

**8.24** Plaintiff seeks all relief available under the ADA, including damages, attorney's fees, and any other appropriate relief.

**Count III – FMLA Interference and Retaliation (Family and Medical Leave Act, 29 U.S.C. § 2615(a)(1)–(2))**

**8.25** Plaintiff incorporates all preceding paragraphs.

**8.26** Plaintiff brings this claim under the FMLA, which prohibits employers from interfering with the exercise of leave rights and retaliating against employees who invoke those rights.

**A. FMLA Interference**

**8.27** To establish interference, Plaintiff must show:

> **(a)** He was an eligible employee;
>
> **(b)** Defendant was subject to FMLA requirements;
>
> **(c)** He was entitled to leave;
>
> **(d)** He gave proper notice; and
>
> **(e)** Defendant interfered with or denied his FMLA rights.

**8.28** Plaintiff was approved for FMLA leave beginning July 2023 due to stress-induced hypertension, anxiety, and psychological distress. See ¶6.09.

**8.29** While on leave, Defendant initiated IA 23-19 and IA 23-20 based on limited, non-compensated personal activity, mischaracterized as misconduct. See ¶6.10.

**8.30** These investigations disrupted Plaintiff's protected leave and undermined the purpose of the FMLA, constituting unlawful interference under § 2615(a)(1).

## B. FMLA Retaliation

**8.31** To establish retaliation, Plaintiff must show:

   **(a)** He engaged in protected activity;

   **(b)** He suffered adverse employment action;

   **(c)** There was a causal connection.

**8.32** Plaintiff exercised his FMLA rights by taking approved medical leave.

**8.33** In response, Defendant reassigned him to a midnight patrol shift with officers previously involved in misconduct, excluded him from command responsibilities, and launched procedurally irregular investigations. See ¶6.08–6.10; ¶6.12.

**8.34** These actions followed closely after Plaintiff's leave and were motivated by retaliatory intent, violating § 2615(a)(2).

**8.35** Interference claims require no proof of intent; retaliation claims require evidence of motive.

**8.36** As a result of Defendant's interference and retaliation, Plaintiff suffered economic loss, reputational harm, emotional distress, and constructive discharge. See ¶6.13; ¶6.20.

**8.37** Plaintiff seeks all relief available under the FMLA, including reinstatement, back pay, liquidated damages, attorney's fees, and other appropriate relief.

**Count IV – Retaliation for Protected Speech (42 U.S.C. § 1983; U.S. Const. amend. I)**

**8.38** Plaintiff incorporates all preceding paragraphs.

**8.39** Plaintiff brings this claim under 42 U.S.C. § 1983, alleging retaliation for engaging in protected speech in violation of the First Amendment.

**8.40** To establish retaliation, Plaintiff must show:

   **(a)** Adverse employment action;

   **(b)** Speech on a matter of public concern;

   **(c)** That Plaintiff's interest outweighed Defendant's efficiency interest;

   **(d)** That speech was a motivating factor.

**8.41** Plaintiff reported unauthorized GPS surveillance and procedural misconduct to external law enforcement, including the Texas Rangers. These disclosures were made as a private citizen and not pursuant to official duties. See ¶6.03–6.05.

**8.42** The speech addressed public concerns—government surveillance, abuse of authority, and obstruction of accountability—not personal grievances. See ¶6.03–6.06.

**8.43** Plaintiff's disclosures did not disrupt operations and served the public interest in transparency and law enforcement integrity. See ¶6.05.

**8.44** Defendant reassigned Plaintiff to a midnight patrol shift, excluded him from command, and initiated repeated IA investigations shortly after the disclosures. See ¶6.08–6.10; ¶6.12.

**8.45** The timing of these actions, Defendant's knowledge of the speech, and lack of legitimate justification support a finding that the speech was a substantial or motivating factor.

**8.46** As a result, Plaintiff suffered economic loss, reputational harm, emotional distress, and constructive discharge. See ¶6.13; ¶6.20.

**8.47** Plaintiff seeks all relief under § 1983, including compensatory and punitive damages, attorney's fees, and other appropriate relief.

**8.48** The law prohibiting retaliation for protected speech was clearly established at the time of the conduct.

**Count V – Unreasonable Search in Violation of the Fourth Amendment (42 U.S.C. § 1983; U.S. Const. amend. IV)**

**8.49** Plaintiff incorporates all preceding paragraphs.

**8.50** Plaintiff brings this claim under 42 U.S.C. § 1983, alleging that Defendant violated his Fourth Amendment rights by installing and using a GPS tracking device on his personal vehicle without a warrant or authorization.

**8.51** The Fourth Amendment protects against unreasonable searches and seizures. A warrant supported by probable cause is generally required. See *United States v. Jones*, 565 U.S. 400 (2012).

**8.52** In Jones, the Supreme Court held that GPS tracking of a vehicle constitutes a "search" under the Fourth Amendment.

**8.53** Plaintiff alleges that Defendant, acting under color of state law, installed or directed the installation of a GPS device on his vehicle without a warrant, consent, or departmental approval. See ¶6.03–6.05.

**8.54** The tracking was not justified by any exception to the warrant requirement and exceeded lawful authority.

**8.55** The search was unreasonable under both the physical trespass theory and the reasonable expectation of privacy standard.

**8.56** Plaintiff lawfully possessed the vehicle and had a reasonable expectation of privacy in its location data. The GPS tracking was intrusive, warrantless, and unconstitutional.

**8.57** As a result, Plaintiff suffered invasion of privacy, emotional distress, reputational harm, and economic loss. See ¶6.13.

**8.58** Plaintiff seeks all relief under § 1983, including compensatory and punitive damages, attorney's fees, and other appropriate relief.

**Count VI – Denial of Due Process and Equal Protection (42 U.S.C. § 1983; U.S. Const. amend. XIV)**

**8.59** Plaintiff incorporates all preceding paragraphs.

**8.60** Plaintiff brings this claim under 42 U.S.C. § 1983, alleging violations of the Fourteenth Amendment's Due Process and Equal Protection Clauses in connection with employment decisions, internal investigations, and disciplinary procedures.

**A. Procedural and Substantive Due Process**

**8.61** Plaintiff had a protected property interest in continued employment, grounded in state law and departmental policies that created a legitimate expectation of continued service. See ¶6.01.

**8.62** Defendant deprived Plaintiff of this interest without timely notice, access to final IA findings, or a meaningful opportunity to respond before excluding him from command and initiating adverse actions. See ¶6.12; ¶6.16.

**8.63** Defendant's conduct was arbitrary and capricious, including reassignment without justification, repeated investigations lacking closure, and exclusion from operational duties. See ¶6.08–6.10; ¶6.12.

**B. Equal Protection**

**8.64** Plaintiff was treated differently than similarly situated officers, including being subjected to more frequent investigations and exclusion from command roles. See ¶6.16–6.17.

**8.65** This differential treatment was based on impermissible factors—namely Plaintiff's disability status and protected activity—and carried out with discriminatory intent. See ¶6.19.

**C. State Action**

**8.66** All actions were taken under color of state law, as Defendant acted in its official capacity and exercised governmental authority over Plaintiff's employment.

**8.67** As a result of these constitutional violations, Plaintiff suffered economic loss, reputational harm, emotional distress, and constructive discharge. See ¶6.13; ¶6.20.

**8.68** Plaintiff seeks all relief available under § 1983, including compensatory and punitive damages, attorney's fees, and other appropriate relief.

**Count VII – Constructive Discharge (Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.; 42 U.S.C. § 1983)**

**8.69** Plaintiff incorporates all preceding paragraphs.

**8.70** Constructive discharge occurs when working conditions become so intolerable that a reasonable person would feel compelled to resign. This standard exceeds that of a hostile work environment.

**8.71** Defendant deliberately created intolerable conditions through reassignment to a midnight patrol shift, exclusion from command, repeated IA investigations, and obstruction of procedural closure. See ¶6.08–6.12; ¶6.20.

**8.72** Under the ADA, Plaintiff was denied accommodations for a documented stress-related condition and subjected to disability-based targeting. See ¶6.09–6.10; ¶6.19.

**8.73** Under the FMLA, Plaintiff was retaliated against after submitting medical documentation and requesting leave, contributing to the hostile environment. See ¶6.09–6.10.

**8.74** Under § 1983, Defendant circumvented procedural due process by withholding IA findings and avoiding pretermination procedures. See ¶6.12; ¶6.16.

**8.75** Defendant's conduct was deliberate—not inadvertent—and aimed at forcing Plaintiff's resignation.

**8.76** The cumulative effect of reassignment, exclusion, surveillance, and procedural obstruction rendered the workplace objectively intolerable.

**8.77** As a result, Plaintiff suffered constructive discharge, economic loss, emotional distress, reputational harm, and related damages. See ¶6.13; ¶6.20.

**8.78** Plaintiff seeks all relief available under the ADA, FMLA, and § 1983, including reinstatement, back pay, compensatory and punitive damages, attorney's fees, and other appropriate relief.

**Count VIII – Unauthorized Electronic Surveillance (Federal Wiretap Act, 18 U.S.C. § 2511; ECPA, 18 U.S.C. § 2520; Tex. Penal Code § 16.06)**

**8.79** Plaintiff incorporates all preceding paragraphs.

**8.80** Plaintiff brings this claim against Defendant City of Abilene under the Federal Wiretap Act, 18 U.S.C. § 2511, and the Electronic Communications Privacy Act (ECPA), 18 U.S.C. § 2520, which prohibit the intentional interception, disclosure, or use of electronic communications without legal authorization.

**8.81** To establish liability under 18 U.S.C. § 2511, Plaintiff must show that Defendant:

(a) Intentionally

(b) Intercepted or procured another to intercept

(c) The contents of

(d) An electronic communication

(e) Using an electronic, mechanical, or other device.

See *DIRECTV, Inc. v. Bennett*, 470 F.3d 565, 569 (5th Cir. 2006).

**8.82** The City of Abilene, acting under color of state law, installed or directed the installation of a GPS tracking device on Plaintiff's personal vehicle without consent, warrant, or departmental authorization. See ¶¶6.03–6.05.

**8.83** The GPS device captured location-linked data, which constitutes an "intercept" of electronic communications under the Wiretap Act. See *Taylor v. Tolbert*, 644 S.W.3d 637, 645 (Tex. App.—Dallas 2022, pet. denied).

**8.84** No court order or statutory exception authorized the tracking, and the data was later disclosed and used in violation of ECPA protections. See *Forsyth v. Barr*, 19 F.3d 1527, 1532 (5th Cir. 1994).

**8.85** These statutes protect against unauthorized interception, disclosure, or use of wire, oral, and electronic communications, and provide civil remedies for aggrieved individuals. See 18 U.S.C. § 2520.

**8.86** Defendant also violated Texas Penal Code § 16.06, which makes it a Class A misdemeanor to knowingly install an electronic or mechanical tracking device on a motor vehicle owned or leased by another person without consent. No statutory exception applied.

**8.87** Plaintiff lawfully possessed the vehicle and has standing to challenge the unauthorized surveillance under both federal and state law.

**8.88** The GPS tracking constituted a warrantless search under the Fourth Amendment. In *United States v. Jones*, 565 U.S. 400, 404–405 (2012), the Supreme Court held that attaching a GPS device to a vehicle and using it to monitor movements constitutes a "search" under the Fourth

Amendment. The Court emphasized that physical intrusion on private property for the purpose of obtaining information triggers constitutional protections.

**8.89** Further, in *Carpenter v. United States*, 585 U.S. 296, 309–310 (2018), the Court held that long-term electronic surveillance, even without physical trespass, implicates a reasonable expectation of privacy and requires a warrant.

**8.90** Defendant's conduct violated Plaintiff's rights under federal surveillance statutes and the Fourth Amendment.

**8.91** After the District Attorney initiated prosecution based on the unauthorized GPS tracking, the City Manager of Abilene intervened and requested that the charges be dropped. Despite knowing the seriousness of the misconduct, the City failed to inform Plaintiff of this intervention. By actively halting prosecution and withholding that information from the victim, the City ratified the unlawful conduct and shielded those responsible from accountability. See *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985) (ratification may be inferred when policymakers condone or fail to discipline known constitutional violations). (See ¶¶6.06–6.07, 6.21.)

**Count IX – Whistleblower Retaliation (Tex. Gov't Code §§ 554.001–554.003)**

**8.92** Plaintiff incorporates all preceding paragraphs.

**8.93** Plaintiff brings this claim under the Texas Whistleblower Act, which prohibits adverse personnel action against a public employee who, in good faith, reports a violation of law to an appropriate law enforcement authority.

**8.94** Plaintiff was a public employee of the City of Abilene at the time of the events giving rise to this claim.

**8.95** Plaintiff made a good faith report of unauthorized GPS surveillance, reasonably believing it violated criminal law based on his training and experience. See ¶6.03–6.05.

**8.96** Plaintiff reported the conduct to the District Attorney and the Texas Rangers—entities authorized to investigate and prosecute criminal violations.

**8.97** After these reports, Defendant reassigned Plaintiff to a midnight patrol shift, excluded him from command responsibilities, and initiated repeated IA investigations. These materially affected Plaintiff's duties and professional standing. See ¶6.08–6.10; ¶6.12.

**8.98** The timing and nature of these actions support an inference of retaliation.

**8.99** Plaintiff alleges that, but for the protected reports, Defendant would not have taken these actions. Circumstantial evidence—including Defendant's knowledge of the report, hostility toward Plaintiff's disclosures, failure to follow internal policies, and disparate treatment—supports the causal link. See ¶6.16–6.17; ¶6.19.

**8.100** As a result of Defendant's retaliation, Plaintiff suffered lost income, reputational harm, emotional distress, and constructive discharge. See ¶6.13; ¶6.20.

**8.101** Plaintiff seeks all relief under Tex. Gov't Code § 554.003, including reinstatement, lost wages and benefits, actual damages, attorney's fees, and other appropriate relief.

## Count X – Class-of-One Equal Protection Violation (42 U.S.C. § 1983; U.S. Const. amend. XIV)

**8.102** Plaintiff incorporates all preceding paragraphs.

**8.103** The Equal Protection Clause prohibits state actors from intentionally treating individuals differently from others similarly situated without a rational basis. This includes "class-of-one" claims under 42 U.S.C. § 1983, where the differential treatment is arbitrary or retaliatory and not based on membership in a protected class.

**8.104** Plaintiff was treated differently than similarly situated officers. He was repeatedly investigated by Internal Affairs, reassigned to undesirable shifts, excluded from operational decisions, and subjected to revived allegations previously resolved or dismissed. See ¶6.08–6.12; ¶6.16–6.17.

**8.105** These actions lacked any rational basis and served no legitimate governmental purpose. They were retaliatory and designed to isolate Plaintiff professionally.

**8.106** Plaintiff can identify officers with comparable or more serious disciplinary histories who were not subjected to similar treatment.

**8.107** Defendant's conduct was not supported by any objective policy or operational need. It was motivated by animus and retaliation for Plaintiff's protected activity and disclosures. See ¶6.19.

**8.108** As a result, Plaintiff suffered economic loss, reputational harm, emotional distress, and constructive discharge. See ¶6.13; ¶6.20.

**8.109** Plaintiff seeks all available relief under § 1983, including compensatory and punitive damages, attorney's fees, and other appropriate relief.

## IX. DAMAGES AND RELIEF REQUESTED

**9.01** Plaintiff seeks all forms of relief available under law and equity, including compensatory damages, punitive damages, declaratory and injunctive relief, attorney's fees, costs of suit, pre- and post-judgment interest, and any other relief the Court deems just and proper.

**9.02** This request encompasses all remedies available under federal law, Texas law, and applicable common law doctrines, consistent with Federal Rule of Civil Procedure 8(a)(3). The precise amount of damages will be determined according to the evidence presented at trial.

## X. JURY DEMAND

**10.01** Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Marshall L. Magincalda
P.O. Box 5529
Abilene, TX 79608
Tel: (325) 725-6663
Email: attorneymarshallmagincalda@gmail.com

By: /s/ *Marshall L. Magincalda*

Marshall L. Magincalda
Attorney Licensed in the State of Texas
State Bar No. 24127958

## EXHIBIT LIST – PLAINTIFF'S COMPLAINT

The following exhibits are attached in support of Plaintiff Ishmael Jaimes's Complaint and are redacted pursuant to Federal Rule of Civil Procedure 5.2 to protect personal identifiers and sensitive information:

| Exhibit | Description |
|---|---|
| **Exhibit A** | Declaration of Ishmael Jaimes from 5A packet affirming truth of complaint (pursuant to 28 U.S.C. § 1746 and Tex. Civ. Prac. & Rem. Code § 132.001) |
| **Exhibit B** | DOJ Notice of Right to Sue dated August 25, 2025 |
| **Exhibit C** | EEOC referral letter confirming transfer to DOJ |
| **Exhibit D** | E-file attorney acknowledgment of EEOC charge submission |
| **Exhibit E** | EEOC Charge Packet (Form 5A and supporting materials: timeline, Ranger report, IA records, medical documentation) |
| **Exhibit F** | Supporting affidavit from Eddie Berrios, friend of Plaintiff |
| **Exhibit G** | Supporting affidavit from Amber Taff, friend of Plaintiff |
| **Exhibit H** | Photographs of Plaintiff's city-leased vehicle and undercarriage showing disturbed area consistent with GPS tracker placement |
| **Exhibit I** | Letter from District Attorney to Texas Ranger |